IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

IVAN CERNA, et al.,

    Defendants.

No. CR 08-0730 WHA

**ORDER DENYING DEFENDANT SOSA'S MOTION TO SUPPRESS RE SEARCH OF RESIDENCE (DKT. NO. 894)**

## INTRODUCTION

On October 22, 2008, federal agents executed a search warrant on what it believed to be defendant Judith Sosa's residence. Defendant Sosa had in fact moved out of that address several months earlier, but her mother still resided there. Defendant Sosa subsequently consented to a search of her car and her new residence. She revoked that consent eight days later. The government then obtained a second search warrant for the items previously seized pursuant to her consent.

Defendant Sosa now moves to suppress the seized evidence on the grounds that the government's original search warrant was overbroad and founded on stale and inaccurate information. She also asserts that the second search warrant was obtained through a knowing and intentional falsehood by the government to the magistrate judge who issued it. She additionally argues that both search warrants failed to establish probable cause to search any electronic media in her possession.

For the following reasons, defendant Sosa's motion is **DENIED**.

**STATEMENT**

This gang prosecution alleges 59 counts against 29 defendants arising from alleged actions of the Mara Salvatrucha gang, also known as MS-13. Most of the defendants in the present action are accused of being members or associates of a San Francisco branch of MS-13 known as the MS-13 20th Street Clique. The alleged offenses include racketeering conspiracy, conspiracy to commit murder, various crimes of violence, narcotics offenses, conspiracy to commit robbery, illegal possession and dealing of firearms and attempted exportation of stolen vehicles, among others.

Defendant Sosa, however, is only charged with one count of conspiracy to distribute or possess with intent to distribute over 50 grams of actual methamphetamine and four counts of distribution or possession with intent to distribute over five grams of actual methamphetamine. Defendant Mauricio Urias is charged with the same five counts as Defendant Sosa and is also charged with one count of racketeering conspiracy, one count of conspiracy to commit murder in aid of racketeering, one count of conspiracy to commit assault with a dangerous weapon in aid of racketeering, one count of use or possession of a firearm in furtherance of a crime of violence, and four counts of distribution or possession with intent to distribute cocaine.

On October 20, 2008, Immigrations and Customs Enforcement Special Agent Christopher Merendino submitted a search warrant application and affidavit seeking judicial authorization to search 17 locations alleged to be the residences of members or associates of the MS-13 20th Street Clique (Def. Decl. Exh. A). One of the premises listed was 138 Appleton Avenue in San Francisco, which was identified as the residence of defendant Sosa based on California Department of Motor Vehicle records and agents' surveillance as recently as August 27, 2008.

In his affidavit, Special Agent Merendino stated that probable cause existed to support issuance of the warrant. He stated that he had been one of the case agents involved in the investigation of MS-13 in the San Francisco Bay Area since 2003 and that based on his experience, training and investigation, MS-13 members and associates often possessed items decorated with MS-13 insignias and symbols in their residences, as well as photographs of

members and associates, which they kept permanently due to their nostalgic value. He stated that based on his experience, training and investigation he knew that individuals engaged in organized criminal activity such as MS-13 racketeering typically kept records, documents, weapons and other tools of their trade for long periods and that MS-13 gang members often kept inculpatory items such as firearms, ammunition, other weapons, evidence of violence and drugs in the residences of their family members, girlfriends and non-member associates.

The affidavit described numerous crimes allegedly committed by members of the 20th Street Clique including specific acts of murder, attempted murder, narcotics trafficking and the attempted exportation of stolen vehicles by its members and associates. Special Agent Merendino also stated specific allegations regarding defendant Sosa. He identified defendant Sosa as an MS-13 associate and the girlfriend/common-law wife of defendant Urias, an alleged MS-13 member. He stated that two confidential informants identified as CS-1 and CS-2 said that defendant Sosa was defendant Urias's girlfriend. The informants also allegedly said that defendants Sosa and Urias were engaged in the distribution of controlled substances. Special Agent Merendino alleged that defendants Sosa and Urias were involved in four sales of methamphetamine to CS-2. With respect to each of these four sales, defendant Sosa allegedly personally delivered the drugs to CS-2 after CS-2 ordered them from Urias. These controlled purchases allegedly took place on May 24, 2006, June 28, 2006, July 11, 2006, and January 23, 2007. Defendant Urias was allegedly involved in four other sales of drugs to CS-2, the last of which was on January 22, 2008. As recently as October 15, 2008, the affidavit states that defendant Urias told CS-2 that his narcotics business was "very good."

Special Agent Merendino reiterated that based on his experience, training and investigation, drug dealers often kept detailed ledgers and records of their narcotics transactions for long periods of time and that MS-13 members often kept instruments of their crimes with girlfriends in order to avoid law enforcement attention. Based on the foregoing, he submitted that probable cause existed to believe that defendant Sosa's residence contained evidence, fruits and instrumentalities relating to the existence and activities of the MS-13 enterprise and other crimes.

Magistrate Judge Nandor Vadas signed the warrant on October 20, 2008, and federal agents executed it on October 22, 2008. Defendant Sosa was not present at 138 Appleton Avenue at that time but her mother was. Her mother stated that in fact defendant Sosa had moved out approximately four months earlier. Her mother called defendant Sosa on the telephone and defendant Sosa agreed to come to 138 Appleton Avenue to speak to the agents who were executing the warrant. Defendant Sosa was arrested upon her arrival. After she was read her *Miranda* rights, she stated among other things that she was a member of a *Sureño* gang clique known as "11th Street," and that she had been "involved" with defendant Urias and had dinner with him the night before. She denied that she was involved in drug transactions with defendant Urias and said she was no longer dating him. She said that she now lived at 322 Alemany Boulevard, Apartment 4B, in San Francisco, and consented to a search of that location as well as to a search of her car.

Pursuant to the consensual search of 322 Alemany Boulevard, federal agents seized several electronic devices including two laptop computers and power supplies, as well as a letter and envelope. Eight days later on October 30, 2008, defendant Sosa's counsel contacted the U.S. Attorney by telephone and revoked her consent to search the seized items. Defense counsel requested that the items be returned to defendant Sosa or in the alternative that they be lodged with Magistrate Judge James Larson while the parties disputed whether there was a continuing basis for the government to search the items.

Later that day, the government sought and received from Magistrate Judge Larson a search warrant authorizing the continued seizure and search of the items seized from 322 Alemany Boulevard. This second warrant was supported by a new affidavit from Special Agent Merendino (Def. Exh. D at SW0273). The affidavit stated in relevant part:

> The AUSA advised me that Sosa's attorney had just contacted him and had revoked her consent to search her apartment and car and demanded return of all items seized pursuant to this consent. The AUSA instructed me not to search or examine any of the items seized from Sosa and to segregate the items. The AUSA also advised me that, although Sosa's attorney had demanded the return of the items, he was concerned that Sosa would destroy or alter any evidence on or in the items seized from her, and that I should seek a new search warrant to search the items.

4

1    The affidavit did not state that defendant Sosa's counsel had requested that the items be lodged with the magistrate judge in the event that the government did not agree to return them to defendant Sosa.

The second search warrant affidavit incorporated and attached the affidavit in support of the earlier search warrant for 138 Appleton Avenue. It elaborated on the probable cause to support the search of defendant Sosa's items. It noted as an example that some evidence found during a search of defendant Urias's residence on October 22, 2008, was as much as four years old.

## ANALYSIS

**1.    VOLUNTARY CONSENT.**

As a preliminary matter, this order notes that it is unclear whether defendant Sosa had a legitimate expectation of privacy necessary to challenge the October 20 search warrant as to 138 Appleton Avenue. In order to claim the protection of the Fourth Amendment, a defendant must demonstrate that she personally has an expectation of privacy in the place searched, and that her expectation is a reasonable one that has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society. *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). In some circumstances a person may have a legitimate expectation of privacy in the house of someone else. For example, the Ninth Circuit has held that a defendant had standing to challenge the search of an apartment where he had a key to the apartment and was "free to come and go as he pleased." *United States v. Davis*, 932 F.2d 752, 757 (9th Cir.1991). On the other hand, a visitor who is merely present with the consent of the householder may not have a legitimate expectation of privacy sufficient to support a Fourth Amendment claim.

In the present action, defendant Sosa has not submitted a sworn declaration in support of her motion, and does not specifically allege the requisite facts to determine that she had a legitimate expectation of privacy sufficient to challenge the search of 138 Appleton Avenue. This alone warrants denial of the motion, but at all events, even if defendant Sosa established a sufficient expectation of privacy, her challenge to the search nevertheless must fail.

5

Significantly, defendant Sosa has not challenged the voluntariness of her consent to the search of her car and new residence at 322 Alemany Boulevard. It is well-settled that voluntary consent to a search obviates the need for a search warrant. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). The fact that a defendant was under arrest at the time she gave consent does not foreclose a finding of voluntariness. *United States v. Calhoun*, 542 F.2d 1094, 1100 (9th Cir. 1976). Even if the search warrant for 138 Appleton Avenue were invalid, this would not be determinative of whether the evidence that was seized from 322 Alemany Boulevard pursuant originally to defendant Sosa's consent and subsequently to the second search warrant should be suppressed. This order nevertheless will examine the first search warrant because it is explicitly incorporated by the affidavit in support of the second search warrant.

**2. THE FIRST SEARCH WARRANT AFFIDAVIT ESTABLISHED PROBABLE CAUSE.**

There is probable cause to issue a search warrant if based on the totality of the circumstances there is a fair probability that evidence of a crime exists in the place indicated in the affidavit. *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007). A magistrate judge's finding of probable cause to issue a search warrant is reviewed for clear error and is given "great deference." *United States v. Hill* 459 F.3d 966 (9th Cir. 2006). A magistrate is permitted to consider the training and experience of law enforcement officers in interpreting whether defendants' seemingly innocent conduct gives rise to probable cause, and may draw reasonable inferences based on the nature of the evidence and the type of offense about where evidence is likely to be kept. *United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995).

Defendant Sosa argues that Special Agent Merendino's affidavit failed to establish probable cause to search 138 Appleton Avenue because the information was stale. In particular, she notes that the last sale of methamphetamine which she is alleged to have delivered to CS-2 occurred on January 23, 2007, twenty-one months before the issuance of the search warrant.

Staleness is evaluated in light of the particular facts of the case and the nature of the criminal activity and property sought. A magistrate judge may properly infer that records of an ongoing criminal business of a long-term nature will be kept for some period of time. *United States v. Greany* 929 F.2d 523, 525 (9th Cir. 1991). In *Greany*, the Ninth Circuit affirmed a

6

search based on two-year old information where the evidence sought was equipment and records relating to a marijuana-growing business because of the long-term nature of marijuana growing.

Similarly, the Ninth Circuit has upheld a search based on twenty-two month old information where "the older information was coupled with recently obtained information." *United States v. Vandering*, 50 F.3d 696, 700 (9th Cir. 1995). As in *Greany*, the Ninth Circuit in *Vandering* recognized in particular that greater lapses of time are permitted in the affidavit if the evidence in the affidavit shows the probable existence of an ongoing criminal business at an earlier time.

Defendant Sosa tries to characterize the evidence in support of the search warrant as four discrete drug sales rather than an ongoing criminal business. This fails because it ignores the allegations in Special Agent Merendino's affidavit based on the statements of two confidential informants *that defendant Sosa was involved in an on-going enterprise to distribute controlled substances with defendant Urias* (Def. Exh. A at SW0102, SW0116). Special Agent Merendino's affidavit specifically alleged that drug dealers often keep detailed ledgers and records of their narcotics transactions for long periods of time. Magistrate Judge Vadas could properly infer that her involvement in this enterprise continued past the date of her last delivery to CS-2.

Similarly, defendant Sosa ignores that the affidavit alleged that she was an associate of MS-13 and the girlfriend of an MS-13 member, defendant Urias. The critical element in a reasonable search is not that the owner of the property is herself suspected of crime but that there is probable cause to believe that the specific evidence of crime to be seized is located on the property to which entry is sought. *United States v. Adjani*, 452 F.d 1140, 1146 (9th Cir. 2006). The key issue is not whether the allegations against defendant Sosa personally were stale, but whether there was probable cause that evidence of criminal racketeering by MS-13 could be found at her residence. It was not clearly erroneous for Magistrate Judge Vadas to find that there was a fair probability that indicia of association with MS-13, weapons, evidence of violence or drugs could be found in the residence of an associate of MS-13, and that defendant

Urias in particular might have kept evidence relating to the allegations against him at his girlfriend's house.

Defendant Sosa's counsel argued at the hearing that the information that defendant Sosa was defendant Urias's girlfriend was itself stale and should be discounted. As noted earlier, defendant Sosa has not submitted a sworn declaration in support of her motion. She allegedly told the agents executing the warrant at 138 Appleton Avenue that although she had broken up with defendant Urias she had also had dinner with him the night before. This record fails to show staleness.

### 3. THE FIRST SEARCH WARRANT WAS NOT OVERBROAD.

A search warrant must clearly state what is sought and must be limited by the probable cause on which it is based. Defendant Sosa argues that the October 20 search warrant was impermissibly broad because she claims that it lacked a statement limiting the search to evidence of particular criminal episodes and that it failed to limit the scope of the warrant to evidence of the crimes which she was accused of committing. She argues in particular that two categories of items sought were impermissibly vague, including "[a]ny and all indicia of membership and/or association with *La Mara Salvatrucha*" and "devices and/or electronic media that can store [such] indicia of membership and/or association." She also argues that these categories lack any limitation as to time or any description of what particular items of evidence were to be seized.

This order disagrees. The level of detail necessary in a warrant is related to the particular circumstances and nature of the evidence sought. In determining whether a warrant is sufficiently particular, the Ninth Circuit has held that one or more of the following factors should be considered: (1) whether probable cause exists to seize all items of a particular type described in the warrant, (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not, and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued. *Adjani*, 452 F.3d at 1148. For the reasons addressed earlier in this order, the warrant in question was not required to limit itself to

crimes that defendant Sosa was accused of committing. Because the affidavit supported probable cause that defendant Sosa was an associate of MS-13 and the girlfriend of an MS-13 member, the proper scope of the analysis should focus on the on-going racketeering enterprise carried out by MS-13 in which defendant Urias allegedly participated. Given the nature of the continuing criminal enterprise alleged in this action, the warrant was not required to limit the search to evidence of particular episodes or overt acts.

Defendant Sosa also ignores that the warrant actually did include specific limitations and descriptions of the two categories of items she specifically challenges as vague and unlimited. In particular, the warrant specified that indicia of membership and/or association with MS-13 sought include:

> "correspondence, letters, notes, printed e-mail, and other documents involving gang members and associates; items decorated with MS-13 and/or other gang-related signs, symbols, and insignias; rosters, contact lists, and dues sheets; telephone, e-mail, and address books; photographs, videos, and other depictions of gang members and/or gang activities, such as meetings and/or 'jump ins;' gang-related clothing and accessories, such as blue bandanas and belts; indicia of contacts with El Salvador and other foreign countries, such as mail, airline tickets, boarding passes, travel itineraries, and wire transfer records"

(Def. Exh. A at SW0131). The search warrant affidavit also provided photographs of MS-13 symbols, rosters, gang-related clothing and accessories as examples to further delineate the items sought (Def. Exh. A, Attachments C and D). This order holds that with these descriptions and exemplars the government described the items to be searched and seized as particularly as could be reasonably expected given the nature of the alleged crimes and the evidence it then possessed.

**4.     BOTH WARRANTS ESTABLISHED PROBABLE CAUSE TO SEARCH ELECTRONICS.**

Defendant Sosa claims that the affidavits in support of both the October 20 and October 30 search warrants failed to establish probable cause for the search of electronic devices. The October 20 search warrant sought electronics including "computers, personal data accessories, cellular telephone, computer flash cards, video tapes, compact disks, digital video disks, and other devices and/or electronic media that can store the indicia of membership and/or association set forth above in electronic form" (Def. Exh. A at SW0131). The second search

9

1  warrant was specifically tailored to the items previously seized pursuant to defendant Sosa's
2  consent including the following electronic devices: two laptop computers, two cellular
3  telephones and power cords. The search of these items was governed by an appended protocol.
4      Electronic media, just like any other object of a search, may be searched if the warrant
5  affidavit establishes a fair probability that contraband or evidence of a crime will be found on
6  the device. *See Adjani*, 452 F.3d 1145. The search warrant at issue specifically described the
7  indicia of membership and/or association sought as including correspondence, letters, rosters,
8  photographs and videos, among other items. It is common sense that these sorts of items may
9  frequently be maintained on electronic devices, and Magistrate Judge Vadas did not commit
10 clear error by inferring that there was a fair probability that Defendant Sosa stored such items in
11 her possession on electronic devices.
12     The Ninth Circuit has held that the government's search protocol for electronic media
13 must be designed to uncover only the information for which it has probable cause and only that
14 information may be examined by the case agents. *United States v. Comprehensive Drug*
15 *Testing*, 579 F.3d 989, 1006 (9th Cir. 2009). Defendant Sosa alleges generally that the
16 government's search protocol in the present action was inadequate, but she fails to specifically
17 identify how it falls short of the required standard. The protocol provided, *inter alia*, that the
18 government could only remove an electronic device from the search location if it could not be
19 searched reasonably on-site and that the government had to complete an off-site search no later
20 than 30 calendar days after the initial execution of the warrant and had to return the device
21 within 30 calendar days after the search except in certain circumstances to preserve evidence or
22 where the device was contraband, a forfeitable instrumentality or fruit of crime. The protocol
23 also required the government to make "all reasonable efforts" to use methods and procedures
24 that minimized exposure of irrelevant, privileged or confidential files (Def. Exh. A, Attachment
25 B). This order finds that the protocol was sufficiently tailored to meet the criteria established in
26 *Comprehensive Drug Testing*.

10

**5.     THE SECOND SEARCH WARRANT WAS NOT OBTAINED THROUGH FALSEHOOD.**

Defendant Sosa alleges that the government obtained the October 30 search warrant from Magistrate Judge Larson through knowing and intentional falsehood in violation of *Franks v. Delaware*, 438 U.S. 154 (1978), because it did not inform the magistrate that defendant Sosa had requested that the items seized pursuant to her request be lodged with him in the event that the government did not agree to return them to defendant Sosa. Defendant Sosa asks for an evidentiary hearing regarding whether the materials seized should be suppressed.

There is a presumption of validity with respect to the affidavit supporting a search warrant. To mandate an evidentiary hearing pursuant to *Franks*, a challenger must allege deliberate falsehood or reckless disregard for the truth, accompanied by an offer of proof. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient to require an evidentiary hearing. Even if these requirements are met, no hearing is required if there remains probable cause to support a warrant setting aside the alleged falsity or reckless disregard. *Franks*, 438 U.S. at 170.

Defendant Sosa argues that if the government had told the magistrate judge about her request to have her property lodged with him, probable cause for a warrant would not have existed because there would have been no risk that the evidence might be returned to defendant Sosa and destroyed. Probable cause for the second warrant did not rest, however, on the risk that defendant Sosa might destroy the evidence if it were returned to her. Indeed, defendant Sosa's argument glosses over the fact that there was ample probable cause that the evidence existed in the first place. This would have been sufficient for the magistrate judge to find probable cause for the warrant even if the government had included defendant Sosa's request in its application. In this circumstance, no *Franks* hearing is necessary.

11

**CONCLUSION**

For the foregoing reasons, defendant Sosa's motion to suppress is **DENIED**. Her motion for a *Franks* hearing is also **DENIED**.

**IT IS SO ORDERED.**

Dated: December 21, 2009.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE